# Exhibit A

United States Code Annotated
  Title 21. Food and Drugs (Refs & Annos)
    Chapter 9. Federal Food, Drug, and Cosmetic Act (Refs & Annos)
      Subchapter V. Drugs and Devices
        Part A. Drugs and Devices (Refs & Annos)

21 U.S.C.A. § 355-1

§ 355-1. Risk evaluation and mitigation strategies

Effective: December 29, 2022

Currentness

**(a) Submission of proposed strategy**

**(1) Initial approval**

If the Secretary, in consultation with the office responsible for reviewing the drug and the office responsible for postapproval safety with respect to the drug, determines that a risk evaluation and mitigation strategy is necessary to ensure that the benefits of the drug outweigh the risks of the drug, and informs the person who submits such application of such determination, then such person shall submit to the Secretary as part of such application a proposed risk evaluation and mitigation strategy. In making such a determination, the Secretary shall consider the following factors:

**(A)** The estimated size of the population likely to use the drug involved.

**(B)** The seriousness of the disease or condition that is to be treated with the drug.

**(C)** The expected benefit of the drug with respect to such disease or condition.

**(D)** The expected or actual duration of treatment with the drug.

**(E)** The seriousness of any known or potential adverse events that may be related to the drug and the background incidence of such events in the population likely to use the drug.

**(F)** Whether the drug is a new molecular entity.

**(2) Postapproval requirement**

**(A) In general**

If the Secretary has approved a covered application (including an application approved before the effective date of this section) and did not when approving the application require a risk evaluation and mitigation strategy under paragraph (1), the Secretary, in consultation with the offices described in paragraph (1), may subsequently require such a strategy for the drug involved (including when acting on a supplemental application seeking approval of a new indication for use of the drug) if the Secretary becomes aware of new safety information and makes a determination that such a strategy is necessary to ensure that the benefits of the drug outweigh the risks of the drug.

**(B) Submission of proposed strategy**

Not later than 120 days after the Secretary notifies the holder of an approved covered application that the Secretary has made a determination under subparagraph (A) with respect to the drug involved, or within such other reasonable time as the Secretary requires to protect the public health, the holder shall submit to the Secretary a proposed risk evaluation and mitigation strategy.

**(3) Abbreviated new drug applications**

The applicability of this section to an application under section 355(j) of this title is subject to subsection (i).

**(4) Non-delegation**

Determinations by the Secretary under this subsection for a drug shall be made by individuals at or above the level of individuals empowered to approve a drug (such as division directors within the Center for Drug Evaluation and Research).

**(b) Definitions**

For purposes of this section:

**(1) Adverse drug experience**

The term "adverse drug experience" means any adverse event associated with the use of a drug in humans, whether or not considered drug related, including--

**(A)** an adverse event occurring in the course of the use of the drug in professional practice;

**(B)** an adverse event occurring from an overdose of the drug, whether accidental or intentional;

**(C)** an adverse event occurring from abuse of the drug;

**(D)** an adverse event occurring from withdrawal of the drug; and

**(E)** any failure of expected pharmacological action of the drug, which may include reduced effectiveness under the conditions of use prescribed in the labeling of such drug, but which may not include reduced effectiveness that is in accordance with such labeling.

**(2) Covered application**

The term "covered application" means an application referred to in section 355(p)(1)(A) of this title.

**(3) New safety information**

The term "new safety information", with respect to a drug, means information derived from a clinical trial, an adverse event report, a postapproval study (including a study under section 355(o)(3) of this title), or peer-reviewed biomedical literature; data derived from the postmarket risk identification and analysis system under section 355(k) of this title; or other scientific data deemed appropriate by the Secretary about--

**(A)** a serious risk or an unexpected serious risk associated with use of the drug that the Secretary has become aware of (that may be based on a new analysis of existing information) since the drug was approved, since the risk evaluation and mitigation strategy was required, or since the last assessment of the approved risk evaluation and mitigation strategy for the drug; or

**(B)** the effectiveness of the approved risk evaluation and mitigation strategy for the drug obtained since the last assessment of such strategy.

**(4) Serious adverse drug experience**

The term "serious adverse drug experience" is an adverse drug experience that--

**(A)** results in--

(i) death;

(ii) an adverse drug experience that places the patient at immediate risk of death from the adverse drug experience as it occurred (not including an adverse drug experience that might have caused death had it occurred in a more severe form);

(iii) inpatient hospitalization or prolongation of existing hospitalization;

(iv) a persistent or significant incapacity or substantial disruption of the ability to conduct normal life functions; or

(v) a congenital anomaly or birth defect; or

    **(B)** based on appropriate medical judgment, may jeopardize the patient and may require a medical or surgical intervention to prevent an outcome described under subparagraph (A).

**(5) Serious risk**

The term "serious risk" means a risk of a serious adverse drug experience.

**(6) Signal of a serious risk**

The term "signal of a serious risk" means information related to a serious adverse drug experience associated with use of a drug and derived from--

    **(A)** a clinical trial;

    **(B)** adverse event reports;

    **(C)** a postapproval study, including a study under section 355(o)(3) of this title;

    **(D)** peer-reviewed biomedical literature;

    **(E)** data derived from the postmarket risk identification and analysis system under section 355(k)(4) of this title; or

    **(F)** other scientific data deemed appropriate by the Secretary.

**(7) Responsible person**

The term "responsible person" means the person submitting a covered application or the holder of the approved such application.

**(8) Unexpected serious risk**

The term "unexpected serious risk" means a serious adverse drug experience that is not listed in the labeling of a drug, or that may be symptomatically and pathophysiologically related to an adverse drug experience identified in the labeling, but differs from such adverse drug experience because of greater severity, specificity, or prevalence.

**(c) Contents**

A proposed risk evaluation and mitigation strategy under subsection (a) shall--

    **(1)** include the timetable required under subsection (d); and

**(2)** to the extent required by the Secretary, in consultation with the office responsible for reviewing the drug and the office responsible for postapproval safety with respect to the drug, include additional elements described in subsections (e) and (f).

**(d) Minimal strategy**

For purposes of subsection (c)(1), the risk evaluation and mitigation strategy for a drug shall require a timetable for submission of assessments of the strategy that--

**(1)** includes an assessment, by the date that is 18 months after the strategy is initially approved;

**(2)** includes an assessment by the date that is 3 years after the strategy is initially approved;

**(3)** includes an assessment in the seventh year after the strategy is so approved; and

**(4)** subject to paragraphs (1), (2), and (3)--

**(A)** is at a frequency specified in the strategy;

**(B)** is increased or reduced in frequency as necessary as provided for in subsection (g)(4)(A); and

**(C)** is eliminated after the 3-year period described in paragraph (1) if the Secretary determines that serious risks of the drug have been adequately identified and assessed and are being adequately managed.

**(e) Additional potential elements of strategy**

**(1) In general**

The Secretary, in consultation with the offices described in subsection (c)(2), may under such subsection require that the risk evaluation and mitigation strategy for a drug include 1 or more of the additional elements described in this subsection if the Secretary makes the determination required with respect to each element involved.

**(2) Medication Guide; patient package insert**

The risk evaluation and mitigation strategy for a drug may require that, as applicable, the responsible person develop for distribution to each patient when the drug is dispensed--

**(A)** a Medication Guide, as provided for under part 208 of title 21, Code of Federal Regulations (or any successor regulations); and

**(B)** a patient package insert, if the Secretary determines that such insert may help mitigate a serious risk of the drug.

**(3) Communication plan**

The risk evaluation and mitigation strategy for a drug may require that the responsible person conduct a communication plan to health care providers, if, with respect to such drug, the Secretary determines that such plan may support implementation of an element of the strategy (including under this paragraph). Such plan may include--

**(A)** sending letters to health care providers;

**(B)** disseminating information about the elements of the risk evaluation and mitigation strategy to encourage implementation by health care providers of components that apply to such health care providers, or to explain certain safety protocols (such as medical monitoring by periodic laboratory tests) [1]

**(C)** disseminating information to health care providers through professional societies about any serious risks of the drug and any protocol to assure safe use; or

**(D)** disseminating information to health care providers about drug formulations or properties, including information about the limitations or patient care implications of such formulations or properties, and how such formulations or properties may be related to serious adverse drug events associated with use of the drug.

**(4) Packaging and disposal**

The Secretary may require a risk evaluation mitigation strategy for a drug for which there is a serious risk of an adverse drug experience described in subparagraph (B) or (C) of subsection (b)(1), taking into consideration the factors described in subparagraphs (C) and (D) of subsection (f)(2) and in consultation with other relevant Federal agencies with authorities over drug disposal packaging, which may include requiring that--

**(A)** the drug be made available for dispensing to certain patients in unit dose packaging, packaging that provides a set duration, or another packaging system that the Secretary determines may mitigate such serious risk; or

**(B)** the drug be dispensed to certain patients with a safe disposal packaging or safe disposal system if the Secretary determines that such safe disposal packaging or system may mitigate such serious risk and is sufficiently available.

**(f) Providing safe access for patients to drugs with known serious risks that would otherwise be unavailable**

**(1) Allowing safe access to drugs with known serious risks**

The Secretary, in consultation with the offices described in subsection (c)(2), may require that the risk evaluation and mitigation strategy for a drug include such elements as are necessary to assure safe use of the drug, because of its inherent toxicity or potential harmfulness, if the Secretary determines that--

**(A)** the drug, which has been shown to be effective, but is associated with a serious adverse drug experience, can be approved only if, or would be withdrawn unless, such elements are required as part of such strategy to mitigate a specific serious risk listed in the labeling of the drug; and

**(B)** for a drug initially approved without elements to assure safe use, other elements under subsections (c), (d), and (e) are not sufficient to mitigate such serious risk.

**(2) Assuring access and minimizing burden**

Such elements to assure safe use under paragraph (1) shall--

**(A)** be commensurate with the specific serious risk listed in the labeling of the drug;

**(B)** within 30 days of the date on which any element under paragraph (1) is imposed, be posted publicly by the Secretary with an explanation of how such elements will mitigate the observed safety risk;

**(C)** considering such risk, not be unduly burdensome on patient access to the drug, considering in particular--

**(i)** patients with serious or life-threatening diseases or conditions;

**(ii)** patients who have difficulty accessing health care (such as patients in rural or medically underserved areas); and

**(iii)** patients with functional limitations; and

**(D)** to the extent practicable, so as to minimize the burden on the health care delivery system--

**(i)** conform with elements to assure safe use for other drugs with similar, serious risks; and

**(ii)** be designed to be compatible with established distribution, procurement, and dispensing systems for drugs.

**(3) Elements to assure safe use**

The elements to assure safe use under paragraph (1) shall include 1 or more goals to mitigate a specific serious risk listed in the labeling of the drug and, to mitigate such risk, may require that--

**(A)** health care providers who prescribe the drug have particular training or experience, or are specially certified (the opportunity to obtain such training or certification with respect to the drug shall be available to any willing provider from

a frontier area in a widely available training or certification method (including an on-line course or via mail) as approved by the Secretary at reasonable cost to the provider);

**(B)** pharmacies, practitioners, or health care settings that dispense the drug are specially certified (the opportunity to obtain such certification shall be available to any willing provider from a frontier area);

**(C)** the drug be dispensed to patients only in certain health care settings, such as hospitals;

**(D)** the drug be dispensed to patients with evidence or other documentation of safe-use conditions, such as laboratory test results;

**(E)** each patient using the drug be subject to certain monitoring; or

**(F)** each patient using the drug be enrolled in a registry.

**(4) Implementation system**

The elements to assure safe use under paragraph (1) that are described in subparagraphs (B), (C), and (D) of paragraph (3) may include a system through which the applicant is able to take reasonable steps to--

**(A)** monitor and evaluate implementation of such elements by health care providers, pharmacists, and other parties in the health care system who are responsible for implementing such elements; and

**(B)** work to improve implementation of such elements by such persons.

**(5) Evaluation of elements to assure safe use**

The Secretary, through the Drug Safety and Risk Management Advisory Committee (or successor committee) or other advisory committee of the Food and Drug Administration, shall--

**(A)** seek input from patients, physicians, pharmacists, and other health care providers about how elements to assure safe use under this subsection for 1 or more drugs may be standardized so as not to be--

**(i)** unduly burdensome on patient access to the drug; and

**(ii)** to the extent practicable, minimize the burden on the health care delivery system;

**(B)** periodically evaluate, for 1 or more drugs, the elements to assure safe use of such drug to assess whether the elements--

  **(i)** assure safe use of the drug;

  **(ii)** are not unduly burdensome on patient access to the drug; and

  **(iii)** to the extent practicable, minimize the burden on the health care delivery system; and

 **(C)** considering such input and evaluations--

  **(i)** issue or modify agency guidance about how to implement the requirements of this subsection; and

  **(ii)** modify elements under this subsection for 1 or more drugs as appropriate.

**(6) Additional mechanisms to assure access**

The mechanisms under section 360bbb of this title to provide for expanded access for patients with serious or life-threatening diseases or conditions may be used to provide access for patients with a serious or life-threatening disease or condition, the treatment of which is not an approved use for the drug, to a drug that is subject to elements to assure safe use under this subsection. The Secretary shall promulgate regulations for how a physician may provide the drug under the mechanisms of section 360bbb of this title.

**(7) Repealed.** Pub.L. 113-5, Title III, § 302(c)(1), Mar. 13, 2013, 127 Stat. 185

**(8) Limitation**

No holder of an approved covered application shall use any element to assure safe use required by the Secretary under this subsection to block or delay approval of an application under section 355(b)(2) or (j) of this title or to prevent application of such element under subsection (i)(1)(B) to a drug that is the subject of an abbreviated new drug application.

**(g) Assessment and modification of approved strategy**

 **(1) Voluntary assessments**

After the approval of a risk evaluation and mitigation strategy under subsection (a), the responsible person involved may, subject to paragraph (2), submit to the Secretary an assessment of the approved strategy for the drug involved at any time.

 **(2) Required assessments**

A responsible person shall submit an assessment of the approved risk evaluation and mitigation strategy for a drug--

**(A)** when submitting a supplemental application for a new indication for use under section 355(b) of this title or under section 262 of Title 42, unless the drug is not subject to section 353(b) of this title and the risk evaluation and mitigation strategy for the drug includes only the timetable under subsection (d);

**(B)** when required by the strategy, as provided for in such timetable under subsection (d);

**(C)** within a time period to be determined by the Secretary, if the Secretary, in consultation with the offices described in subsection (c)(2), determines that an assessment is needed to evaluate whether the approved strategy should be modified to--

**(i)** ensure the benefits of the drug outweigh the risks of the drug; or

**(ii)** minimize the burden on the health care delivery system of complying with the strategy.

**(3) Requirements for assessments**

An assessment under paragraph (1) or (2) of an approved risk evaluation and mitigation strategy for a drug shall include, with respect to each goal included in the strategy, an assessment of the extent to which the approved strategy, including each element of the strategy, is meeting the goal or whether 1 or more such goals or such elements should be modified.

**(4) Modification**

**(A) On initiative of responsible person**

After the approval of a risk evaluation and mitigation strategy by the Secretary, the responsible person may, at any time, submit to the Secretary a proposal to modify the approved strategy. Such proposal may propose the addition, modification, or removal of any goal or element of the approved strategy and shall include an adequate rationale to support such proposed addition, modification, or removal of any goal or element of the strategy.

**(B) On initiative of Secretary**

After the approval of a risk evaluation and mitigation strategy by the Secretary, the Secretary may, at any time, require a responsible person to submit a proposed modification to the strategy within 120 days or within such reasonable time as the Secretary specifies, if the Secretary, in consultation with the offices described in subsection (c)(2), determines that 1 or more goals or elements should be added, modified, or removed from the approved strategy to--

**(i)** ensure the benefits of the drug outweigh the risks of the drug;

**(ii)** minimize the burden on the health care delivery system of complying with the strategy; or

**(iii)** accommodate different, comparable aspects of the elements to assure safe use for a drug that is the subject of an application under section 355(j) of this title, and the applicable listed drug.

**(h) Review of proposed strategies; review of assessments and modifications of approved strategies**

**(1) In general**

The Secretary, in consultation with the offices described in subsection (c)(2), shall promptly review each proposed risk evaluation and mitigation strategy for a drug submitted under subsection (a) and each assessment of and proposed modification to an approved risk evaluation and mitigation strategy for a drug submitted under subsection (g), and, if necessary, promptly initiate discussions with the responsible person about such proposed strategy, assessment, or modification.

**(2) Action**

**(A) In general**

**(i) Timeframe**

Unless the dispute resolution process described under paragraph (3) or (4) applies, and, except as provided in clause (ii) or clause (iii) below, the Secretary, in consultation with the offices described in subsection (c)(2), shall review and act on the proposed risk evaluation and mitigation strategy for a drug or any proposed modification to any required strategy within 180 days of receipt of the proposed strategy or modification.

**(ii) Minor modifications**

The Secretary shall review and act on a proposed minor modification, as defined by the Secretary in guidance, within 60 days of receipt of such modification.

**(iii) REMS modification due to safety labeling changes**

Not later than 60 days after the Secretary receives a proposed modification to an approved risk evaluation and mitigation strategy to conform the strategy to approved safety labeling changes, including safety labeling changes initiated by the responsible person in accordance with FDA regulatory requirements, or to a safety labeling change that the Secretary has directed the holder of the application to make pursuant to section 355(o)(4) of this title, the Secretary shall review and act on such proposed modification to the approved strategy.

**(iv) Guidance**

The Secretary shall establish, through guidance, that responsible persons may implement certain modifications to an approved risk evaluation and mitigation strategy following notification to the Secretary.

**(B) Inaction**

An approved risk evaluation and mitigation strategy shall remain in effect until the Secretary acts, if the Secretary fails to act as provided under subparagraph (A).

**(C) Public availability**

Upon acting on a proposed risk evaluation and mitigation strategy or proposed modification to a risk evaluation and mitigation strategy under subparagraph (A), the Secretary shall make publicly available an action letter describing the actions taken by the Secretary under such subparagraph (A).

**(3) Dispute resolution at initial approval**

If a proposed risk evaluation and mitigation strategy is submitted under subsection (a)(1) in an application for initial approval of a drug and there is a dispute about the strategy, the responsible person shall use the major dispute resolution procedures as set forth in the letters described in section 101(c) of the Food and Drug Administration Amendments Act of 2007.

**(4) Dispute resolution in all other cases**

**(A) Request for review**

**(i) In general**

The responsible person may, after the sponsor is required to make a submission under subsection (a)(2) or (g), request in writing that a dispute about the strategy be reviewed by the Drug Safety Oversight Board under subsection (j), except that the determination of the Secretary to require a risk evaluation and mitigation strategy is not subject to review under this paragraph. The preceding sentence does not prohibit review under this paragraph of the particular elements of such a strategy.

**(ii) Scheduling**

Upon receipt of a request under clause (i), the Secretary shall schedule the dispute involved for review under subparagraph (B) and, not later than 5 business days of scheduling the dispute for review, shall publish by posting on the Internet or otherwise a notice that the dispute will be reviewed by the Drug Safety Oversight Board.

**(B) Scheduling review**

If a responsible person requests review under subparagraph (A), the Secretary--

**(i)** shall schedule the dispute for review at 1 of the next 2 regular meetings of the Drug Safety Oversight Board, whichever meeting date is more practicable; or

**(ii)** may convene a special meeting of the Drug Safety Oversight Board to review the matter more promptly, including to meet an action deadline on an application (including a supplemental application).

### (C) Agreement after discussion or administrative appeals

#### (i) Further discussion or administrative appeals

A request for review under subparagraph (A) shall not preclude further discussions to reach agreement on the risk evaluation and mitigation strategy, and such a request shall not preclude the use of administrative appeals within the Food and Drug Administration to reach agreement on the strategy, including appeals as described in the letters described in section 101(c) of the Food and Drug Administration Amendments Act of 2007 for procedural or scientific matters involving the review of human drug applications and supplemental applications that cannot be resolved at the divisional level. At the time a review has been scheduled under subparagraph (B) and notice of such review has been posted, the responsible person shall either withdraw the request under subparagraph (A) or terminate the use of such administrative appeals.

#### (ii) Agreement terminates dispute resolution

At any time before a decision and order is issued under subparagraph (G), the Secretary (in consultation with the offices described in subsection (c)(2)) and the responsible person may reach an agreement on the risk evaluation and mitigation strategy through further discussion or administrative appeals, terminating the dispute resolution process, and the Secretary shall issue an action letter or order, as appropriate, that describes the strategy.

### (D) Meeting of the Board

At a meeting of the Drug Safety Oversight Board described in subparagraph (B), the Board shall--

**(i)** hear from both parties via written or oral presentation; and

**(ii)** review the dispute.

### (E) Record of proceedings

The Secretary shall ensure that the proceedings of any such meeting are recorded, transcribed, and made public within 90 days of the meeting. The Secretary shall redact the transcript to protect any trade secrets and other information that is exempted from disclosure under section 552 of Title 5 or section 552a of Title 5.

### (F) Recommendation of the Board

Not later than 5 days after any such meeting, the Drug Safety Oversight Board shall provide a written recommendation on resolving the dispute to the Secretary. Not later than 5 days after the Board provides such written recommendation to the Secretary, the Secretary shall make the recommendation available to the public.

**(G) Action by the Secretary**

**(i) Action letter**

With respect to a proposal or assessment referred to in paragraph (1), the Secretary shall issue an action letter that resolves the dispute not later than the later of--

**(I)** the action deadline for the action letter on the application; or

**(II)** 7 days after receiving the recommendation of the Drug Safety Oversight Board.

**(ii) Order**

With respect to an assessment of an approved risk evaluation and mitigation strategy under subsection (g)(1) or under any of subparagraphs (B) through (D) of subsection (g)(2), the Secretary shall issue an order, which shall be made public, that resolves the dispute not later than 7 days after receiving the recommendation of the Drug Safety Oversight Board.

**(H) Inaction**

An approved risk evaluation and mitigation strategy shall remain in effect until the Secretary acts, if the Secretary fails to act as provided for under subparagraph (G).

**(I) Effect on action deadline**

With respect to a proposal or assessment referred to in paragraph (1), the Secretary shall be considered to have met the action deadline for the action letter on the application if the responsible person requests the dispute resolution process described in this paragraph and if the Secretary has complied with the timing requirements of scheduling review by the Drug Safety Oversight Board, providing a written recommendation, and issuing an action letter under subparagraphs (B), (F), and (G), respectively.

**(J) Disqualification**

No individual who is an employee of the Food and Drug Administration and who reviews a drug or who participated in an administrative appeal under subparagraph (C)(i) with respect to such drug may serve on the Drug Safety Oversight Board at a meeting under subparagraph (D) to review a dispute about the risk evaluation and mitigation strategy for such drug.

**(K) Additional expertise**

The Drug Safety Oversight Board may add members with relevant expertise from the Food and Drug Administration, including the Office of Pediatrics, the Office of Women's Health, or the Office of Rare Diseases, or from other Federal public health or health care agencies, for a meeting under subparagraph (D) of the Drug Safety Oversight Board.

**(5) Use of advisory committees**

The Secretary may convene a meeting of 1 or more advisory committees of the Food and Drug Administration to--

**(A)** review a concern about the safety of a drug or class of drugs, including before an assessment of the risk evaluation and mitigation strategy or strategies of such drug or drugs is required to be submitted under subparagraph (B) or (C) of subsection (g)(2);

**(B)** review the risk evaluation and mitigation strategy or strategies of a drug or group of drugs; or

**(C)** review a dispute under paragraph (3) or (4).

**(6) Process for addressing drug class effects**

**(A) In general**

When a concern about a serious risk of a drug may be related to the pharmacological class of the drug, the Secretary, in consultation with the offices described in subsection (c)(2), may defer assessments of the approved risk evaluation and mitigation strategies for such drugs until the Secretary has convened 1 or more public meetings to consider possible responses to such concern.

**(B) Notice**

If the Secretary defers an assessment under subparagraph (A), the Secretary shall--

**(i)** give notice of the deferral to the holder of the approved covered application not later than 5 days after the deferral;

**(ii)** publish the deferral in the Federal Register; and

**(iii)** give notice to the public of any public meetings to be convened under subparagraph (A), including a description of the deferral.

**(C) Public meetings**

Such public meetings may include--

**(i)** 1 or more meetings of the responsible person for such drugs;

**(ii)** 1 or more meetings of 1 or more advisory committees of the Food and Drug Administration, as provided for under paragraph (6); or

>> **(iii)** 1 or more workshops of scientific experts and other stakeholders.

> **(D) Action**

> After considering the discussions from any meetings under subparagraph (A), the Secretary may--

>> **(i)** announce in the Federal Register a planned regulatory action, including a modification to each risk evaluation and mitigation strategy, for drugs in the pharmacological class;

>> **(ii)** seek public comment about such action; and

>> **(iii)** after seeking such comment, issue an order addressing such regulatory action.

**(7) International coordination**

The Secretary, in consultation with the offices described in subsection (c)(2), may coordinate the timetable for submission of assessments under subsection (d), or a study or clinical trial under section 355(o)(3) of this title, with efforts to identify and assess the serious risks of such drug by the marketing authorities of other countries whose drug approval and risk management processes the Secretary deems comparable to the drug approval and risk management processes of the United States. If the Secretary takes action to coordinate such timetable, the Secretary shall give notice to the responsible person.

**(8) Effect**

Use of the processes described in paragraphs (6) and (7) shall not be the sole source of delay of action on an application or a supplement to an application for a drug.

**(i) Abbreviated new drug applications**

**(1) In general**

A drug that is the subject of an abbreviated new drug application under section 355(j) of this title is subject to only the following elements of the risk evaluation and mitigation strategy required under subsection (a) for the applicable listed drug:

> **(A)** A Medication Guide or patient package insert, if required under subsection (e) for the applicable listed drug.

> **(B)** A packaging or disposal requirement, if required under subsection (e)(4) for the applicable listed drug.

> **(C)(i)** Elements to assure safe use, if required under subsection (f) for the listed drug, which, subject to clause (ii), for a drug that is the subject of an application under section 355(j) of this title may use--

   **(I)** a single, shared system with the listed drug under subsection (f); or

   **(II)** a different, comparable aspect of the elements to assure safe use under subsection (f).

  **(ii)** The Secretary may require a drug that is the subject of an application under section 355(j) of this title and the listed drug to use a single, shared system under subsection (f), if the Secretary determines that no different, comparable aspect of the elements to assure safe use could satisfy the requirements of subsection (f).

**(2) Action by Secretary**

For an applicable listed drug for which a drug is approved under section 355(j) of this title, the Secretary--

 **(A)** shall undertake any communication plan to health care providers required under subsection (e)(3) for the applicable listed drug;

 **(B)** shall permit packaging systems and safe disposal packaging or safe disposal systems that are different from those required for the applicable listed drug under subsection (e)(4); and

 **(C)** shall inform the responsible person for the drug that is so approved if the risk evaluation and mitigation strategy for the applicable listed drug is modified.

**(3) Shared REMS**

If the Secretary approves, in accordance with paragraph (1)(C)(i)(II), a different, comparable aspect of the elements to assure safe use under subsection (f) for a drug that is the subject of an abbreviated new drug application under section 355(j) of this title, the Secretary may require that such different comparable aspect of the elements to assure safe use can be used with respect to any other drug that is the subject of an application under section 355(j) or 355(b) of this title that references the same listed drug.

**(j) Drug Safety Oversight Board**

 **(1) In general**

There is established a Drug Safety Oversight Board.

 **(2) Composition; meetings**

The Drug Safety Oversight Board shall--

 **(A)** be composed of scientists and health care practitioners appointed by the Secretary, each of whom is an employee of the Federal Government;

**(B)** include representatives from offices throughout the Food and Drug Administration, including the offices responsible for postapproval safety of drugs;

**(C)** include at least 1 representative each from the National Institutes of Health and the Department of Health and Human Services (other than the Food and Drug Administration);

**(D)** include such representatives as the Secretary shall designate from other appropriate agencies that wish to provide representatives; and

**(E)** meet at least monthly to provide oversight and advice to the Secretary on the management of important drug safety issues.

**(k) Waiver in public health emergencies**

The Secretary may waive any requirement of this section with respect to a qualified countermeasure (as defined in section 247d-6a(a)(2) of Title 42) to which a requirement under this section has been applied, if the Secretary determines that such waiver is required to mitigate the effects of, or reduce the severity of, the circumstances under which--

**(1)** a determination described in subparagraph (A), (B), or (C) of section 360bbb-3(b)(1) of this title has been made by the Secretary of Homeland Security, the Secretary of Defense, or the Secretary, respectively; or

**(2)** the identification of a material threat described in subparagraph (D) of section 360bbb-3(b)(1) of this title has been made pursuant to section 247d-6b of Title 42.

**(l) Provision of samples not a violation of strategy**

The provision of samples of a covered product to an eligible product developer (as those terms are defined in section 355-2(a) of this title) shall not be considered a violation of the requirements of any risk evaluation and mitigation strategy that may be in place under this section for such drug.

**(m) Separate REMS**

When used in this section, the term "different, comparable aspect of the elements to assure safe use" means a risk evaluation and mitigation strategy for a drug that is the subject of an application under section 355(j) of this title that uses different methods or operational means than the strategy required under subsection (a) for the applicable listed drug, or other application under section 355(j) of this title with the same such listed drug, but achieves the same level of safety as such strategy.

**CREDIT(S)**

(June 25, 1938, c. 675, § 505-1, as added Pub.L. 110-85, Title IX, § 901(b), Sept. 27, 2007, 121 Stat. 926; amended Pub.L. 112-144, Title XI, § 1132(a), (b), July 9, 2012, 126 Stat. 1119; Pub.L. 113-5, Title III, § 302(c), Mar. 13, 2013, 127 Stat. 185;

Pub.L. 114-255, Div. A, Title III, §§ 3075(c), 3101(a)(2)(C), Dec. 13, 2016, 130 Stat. 1139, 1153; Pub.L. 115-52, Title VI, § 606, Aug. 18, 2017, 131 Stat. 1049; Pub.L. 115-271, Title III, §§ 3032(a) to (c), 3041(a), Oct. 24, 2018, 132 Stat. 3940, 3942; Pub.L. 116-94, Div. N, Title I, § 610(d), (f), Dec. 20, 2019, 133 Stat. 3135, 3136; Pub.L. 117-328, Div. FF, Title III, § 3221, Dec. 29, 2022, 136 Stat. 5829.)

**Footnotes**

1   So in original. A semicolon probably should appear.

21 U.S.C.A. § 355-1, 21 USCA § 355-1
Current through P.L. 118-3. Some statute sections may be more current, see credits for details.

---

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.